## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **TONY W. REDMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:08-0881** |
| | ) | |
| **CHARLES E. KILGORE, JR., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 1.) and Motion for Default Judgment (Document No. 16.). By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Having examined Plaintiff's Complaint, the undersigned has concluded that Plaintiff fails to state a claim for which relief can be granted in this matter and therefore respectfully recommends that Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 1.) and Motion for Default Judgment (Document No. 16.) be denied and this matter be dismissed.

### FACTS AND PROCEDURE

On June 30, 2008, Plaintiff, an inmate formerly incarcerated at FCI Beckley,[1] and acting *pro se*, filed his Application to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403

---

[1]  The Bureau of Prisons' Inmate Locator indicates that Plaintiff is incarcerated at USP Coleman II, located in Coleman, Florida.

U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2] (Document Nos. 1 and 2.) Plaintiff names

the following as Defendants: (1) Charles E. Kilgore, Jr., Disciplinary Hearing Officer at FCI Beckley;

(2) R. Hawkins, Correctional Officer at FCI Beckley; (3) T. Kirkland, Correctional Officer at FCI

Beckley; and (4) Mr. Miller, Correctional Officer at FCI Beckley. (Document No. 2, pp. 1 - 2.)

Plaintiff complains that Defendants violated his constitutional rights by failing to comply with their

policies during disciplinary hearings, by placing him in segregation, and by denying him certain

prison privileges. (Id., pp. 2 - 7.) First, Plaintiff argues he was improperly convicted of violating

Offense Code 216A, Bribery of Staff.[3] (Id.) Plaintiff states that Defendant Miller requested him "to

draft and design a handkerchief for his 7-year-old daughter, only so Defendant Miller could use the

same as a tool for which to impute disciplinary action upon Plaintiff." (Id., p. 5.) Thus, Plaintiff

claims Defendant Miller "encouraged Plaintiff to commit a violation of Prison Regulation 216A."

(Id.) Next, Plaintiff asserts Defendant Hawkins issued "a defective false incident report, which was

earlier expunged by the disciplinary hearing officer." (Id.) Plaintiff explains that Defendant Kirkland

"re-issued the same incident report which had already been attempted by Defendant Hawkins." (Id.,

p. 6.) Plaintiff argues Defendant Kirkland "alleged that Plaintiff on 4/17/07 was found to have

introduced non-hazardous contraband into the prison (Rule 331A), however, it is well recognized that

smoking tobacco is hazardous, therefore the offense does not support the charge."[4] (Id.) Third,

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[3] It does not appear that Plaintiff exhausted his administrative remedies concerning his conviction of violating Offense Code 216A.

[4] In response to Plaintiff's administrative remedy, Regional Director Nalley stated as follows: "You were aware the substance was tobacco and concealed within squeeze bottle container, which is a prohibited item. You assisted in collecting and selling containers that were being

Plaintiff claims on May 1, 2008, he was "found in abuse of the phone procedure Rule 297, which was the prior expunged charge." (Id.) Plaintiff asserts Defendants improperly combined "two unrelated incidents, separate to each other, exceeding weeks in time, and then taxied them all into one single incident report in violation of the disciplinary procedures." (Id.) As a result of the disciplinary action, Plaintiff states that (1) he was transferred to a prison more than 500 miles from his home; (2) he was placed in segregation from May 30, 2007 through September, 2007; and (3) he lost visitation, telephone access, and good time credit.[5] (Id., p. 5.) Fourth, Plaintiff appears to argue that Defendants violated his due process rights by placing him in segregation and depriving him of visitation and telephone privileges. (Id., p. 6.) Finally, Plaintiff complains that the loss of visitation and telephone privileges resulted in cruel and unusual punishment. (Id., p. 7.) Therefore, Plaintiff seeks monetary, declaratory, and injunctive relief. (Id., pp. 7 - 8.)

In support of his Complaint, Plaintiff attaches the following Exhibits: (1) A copy of Regional Director Michael K. Nalley's Response dated December 18, 2007 (Administrative Remedy No. 467875-R5) (Id., p. 10.); and (2) A copy of Administrator Harrell Watts' Response dated April 18, 2008 (Administrative Remedy No. 467875-A2) (Id., p. 11.).[6]

---

introduced into the facility via being thrown over the secure fence by a non-incarcerated individual." (Document No. 2, p. 10.)

[5] Specifically, Plaintiff alleges that the following sanctions were imposed for his violation of Offense Code 331A "(A) 13 days loss of good time, (B) 20 days loss of good time, (C) one year loss of visits, and (D) one year loss of phone privileges." For violation of Offense Code 297, Plaintiff states the following sanctions were imposed: "(A) 27 loss of good time, and (B) one year loss of phone privileges." (Document No. 2, p. 4.)

[6] The undersigned notes that Administrative Remedy No. 467875 challenges the decision of the Disciplinary Hearing Officer [DHO], which was entered August 28, 2007. The DHO determined that Plaintiff was guilty of violating Offense Code 297 (Use of the Telephone for Abuses Other than Criminal Activity) and Offense Code 331(A) (Possession, Manufacture, or Introduction of a Non-Hazardous Tool or Other Non-Hazardous Contraband). (Document No. 2, pp. 10 - 11.)

On April 26, 2010, Plaintiff filed a "Motion for Default Judgment." (Document No. 16.) Plaintiff requests "this Court grant me Judgment on the grounds that the Defendants have not followed time limits as required under the Federal Rules of Civil Procedure." (Id.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64

4

L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228,

239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's

recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth

Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An

action for money damages may be brought against federal agents acting under the color of their

authority for injuries caused by their unconstitutional conduct. Proof of causation between the

official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a

claim under Bivens must show the violation of a valid constitutional right by a person acting under

color of federal law.[7] The United States Supreme Court has held that an inmate may name a federal

officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional

violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271

(1991). However, Bivens claims are not actionable against the United States, federal agencies, or

public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114

S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold

---

[7] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

**1.      Prison Discipline Has Not Been Vitiated.**

Plaintiff alleges that Defendants violated his right to due process by misapplying their policies and procedures during certain disciplinary hearings. (Document No.2, pp. 4 - 7.) Plaintiff requests this Court to "expunge the disciplinary convictions," restore his loss of good time credit, and reinstate his visitation and telephone privileges.[8] (Id., pp. 7 - 8.) In Heck v. Humphrey, 512 U.S.477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) the Supreme Court established the following test to determine whether a prisoner's claim for violation of due process in the context of a criminal proceeding is cognizable under 42 U.S.C. § 1983.

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck, 512 U.S. at 487, 114 S.Ct. at 2372-73; see also Messer v. Kelly, 129 F.3d 1259 (4th Cir. 1997)(stating that the rationale in *Heck* applies in *Bivens* actions).

The Supreme Court applied the Heck rule to prison disciplinary proceedings in Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), when it held that, in the context of

---

[8] Plaintiff alleges that he lost good time credit and visitation and telephone privileges as a sanction for violating the disciplinary rules.

6

prison disciplinary hearings that result in the loss of good-time credits, challenges to prison hearing procedures which necessarily imply the invalidity of the judgment must be pursued in *habeas corpus*, not in a Section 1983 action. In Balisok, the inmate alleged that he was denied the opportunity to put on a defense due to the deceit and bias of the hearing officer. The Court held "that [Balisok's] claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Edwards, 520 U.S. at 648, 117 S.Ct. at 1589. Accordingly, the undersigned proposes that the District Court find (1) that Plaintiff alleges that he was denied due process in connection with his prison disciplinary hearings, (2) that his contentions imply the invalidity of the disciplinary hearings and the review and appeal process, (3) that there has been no invalidation of the disciplinary hearings, and (4) that his claim is therefore barred.[9]

## 2.    No Due Process Violation.

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement.

---

[9]   The undersigned further notes that prisoner disciplinary proceedings are not part of criminal prosecution. Thus, the full panoply of rights due a defendant in criminal proceedings do not apply in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)("there must be mutual accommodation between institutional needs and objective and the provisions of the Constitution"). Inmates, however, are entitled to the following procedural safeguards during disciplinary hearings: (1) advance written notice to the inmate of the claimed violation; (2) an opportunity for the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finders of the evidence relied on and the reasons for the disciplinary action. *Id.*, at 563 - 66. The undersigned notes that Plaintiff does not allege he was denied any of the above procedural safeguards.

<u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting <u>Roth</u>, 408 U.S. at 577, 92 S.Ct. 2709). In <u>Gaston</u>, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." <u>Id.</u> at 343. The Supreme Court held in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. <u>Id.</u>, 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. <u>Id.</u>

    **(a)**    ***Liberty Interest in Placement into General Population*:**

Applying the principles set forth in <u>Sandin</u>, the undersigned finds Plaintiff's placement in segregation is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the appropriateness for his placement in segregation, he does not complain that specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in mainline population. Additionally, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship.[10] Segregation, in and of itself, does not deprive an inmate of a

---

[10] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

liberty interest or create an atypical hardship. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); Meachum v. Farno, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest); and Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"). Thus, Plaintiff's claim of a liberty interest in remaining free of segregation or in the fact of his confinement in segregation is without merit. To the extent Plaintiff complains that Defendants misapplied the prison's policies concerning segregation, Plaintiff's claim must fail because due process is not implicated where there is no liberty interest. See Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. Mar. 5, 2008)(finding that plaintiff's "due process complaints

---

...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"). Accordingly, the undersigned finds that Plaintiff's claim is without merit.

      **(b)**    ***Liberty Interest in Retaining Prison Privileges*:**

To the extent Plaintiff alleges a liberty interest in retaining his visitation and telephone privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no absolute right to prison visitation or telephone privileges. See Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109, S.Ct. 1904, 104 L.Ed.2d 506 (1989)("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause."); Smith v. Roper, 12 Fed.Appx. 393, 396 (7th Cir. 2001), cert. denied, 534 U.S. 1093, 122 S.Ct. 839, 151 L.Ed.2d 718 (2002)("In light of *Sandin*, the deprivations that Smith suffered as a result of the disciplinary proceedings - namely, 22 days in segregation, a six-month loss of privileges associated with his

demotion to C class, and six days without phone privileges - do not implicate a liberty interest."); Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(finding that an involuntary transfer to a higher-security facility and  loss of work and phone privileges did not constitute atypical and significant hardship); Alkebulanyahh v. Ozmint, 2009 WL 2043912, *9 (D.S.C. July 13, 2009), aff'd, 358 Fed.Appx. 431 (4th Cir. 2009)("[P]rison visitation does not implicate the standard set forth in Sandin."); Principio v. McGinnis, 2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15, 2007)(finding that "60 days of keeplock with loss of telephone, packages, recreation and conjugal visits," was not an atypical or significant hardship); Richardson v. Johnson, 2001 WL 360843, * 1 n. 1 (N.D.Tex. April 5, 2001)(finding that phone-privilege restrictions, like commissary and recreation restrictions, do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life); James v. Odom, 2000 WL 1136563 *5 (S.D.Ala. May 30, 2000)(finding a 45-day restriction on inmate's "store, phone, and visiting privileges" did not constituted an atypical or significant hardship); Ozolina v. Durant, 1996 WL 82481, * 1 (E.D.Pa. Feb. 26, 1996)(Under Sandin, "there is no right to visitation protected by the Due Process Clause."); and White v. Keller, 438 F.Supp. 110, 114 (D.C.Md. 1997), aff'd, 588 F.2d 913 (4th Cir. 1978)("[T]here is no constitutional right to prison visitation, either for prisoners or visitors"). Accordingly, to the extent that Plaintiff is claiming his liberty interest in retaining visitation and telephone privileges were violated, the undersigned finds that Plaintiff's claim is without merit.

**3.     Eighth Amendment Claim.**

Plaintiff contends that his placement in segregation and the restriction on his telephone and visitation privileges resulted in cruel and unusual punishment prohibited under the Eighth

Amendment of the United States Constitution.[11] As a general matter, prohibited punishments under the Eighth Amendment include those which involve the "unnecessary and wanton infliction of pain," and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The Eighth Amendment "not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'") (quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. at 2399 (Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

---

[11] It does not appear that Plaintiff has properly exhausted his claim that sanctions imposed by the DHO resulted in cruel and unusual punishment.

(a)     *Segregation:*

The Fourth Circuit stated as follows respecting the constitutionality of holding inmates in segregation for long periods of time in In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999), cert. denied, Mickle v. Moore, 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1991):

> [T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged activity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other legitimate deprivations." Sweet v. South Carolina Dep't of Corrections], 529 F.2d at 861 (internal quotation marks omitted).
>
> Moreover, the indefinite duration of the inmates' segregation does not render it unconstitutional. ***[L]ength of time is "simply one consideration among many" in the Eighth Amendment inquiry. Hutto v. Finney , 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *see* Sweet, 529 F.2d at 861-62. ***Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the "extreme deprivations . . . required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 8-9, 122 S.Ct. 995, 117 L.Ed.2d 156 (1992). A depressed mental state, without more, does not rise to the level of "serious or significant physical or emotional injury" that must be shown to withstand summary judgment on an Eighth Amendment charge. Strickland [v. Walters], 989 F.2d at 1381; *see* Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

In view of the foregoing authority, Plaintiff clearly does not state facts in support of his Eighth Amendment claim that would entitle him to relief. Plaintiff alleges that Defendants subjected him to cruel and unusual punishment by placing him in segregation "from May 30, 2007, through September, 2007," while he was being investigated for disciplinary rule violations. (Document No. 2, p. 4.) The undersigned notes that Plaintiff's confinement in segregation was for a short, specific period of time. Although Plaintiff may have been inconvenienced in a number of ways as a result of his placement in segregation, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

(b)    *Visitation and Telephone Privileges:*

In <u>Overton v. Bazzetta</u>, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), the United States Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not result in cruel and unusual punishment. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 137-38, 123 S.Ct. 2162, 2170, 156 L.Ed.2d 162 (2003)(finding a two-year deprivation of visitation privileges did not violate the Eighth Amendment). The Supreme Court explained as follows:

> This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. If the withdrawal of all visitation privilege were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different consideration.

<u>Id.</u>, 539 U.S. at 137, 123 S.Ct. at 2170(citations omitted).

First, Plaintiff alleges he lost visitation privileges for one year as a sanction for violating Offense Code 331, Bringing Non-Hazardous Contraband into a Prison. (Document No. 2, p. 4.) Next, Plaintiff claims he lost telephone privileges for two years as a sanction for violating Offense Code 297, Use of the Telephone for Abuses Other Than Criminal Activity, and Offense Code 331, Bringing Non-Hazardous Contraband into a Prison. (<u>Id.</u>) Thus, Plaintiff's visitation and telephone privileges were suspended for a limited period of time. The Court finds that a one-year suspension of Plaintiff's visitation privileges and a two-year suspension of his telephone privileges as a means of effecting prison discipline, is not a dramatic departure from accepted conditions of confinement. <u>See</u> <u>Thomas v. Drew</u>, 365 Fed.Appx. 485, 488 (4th Cir. 2010)(no Eighth Amendment violation where inmate's telephone privileges were suspended for more than 50 years as a sanction for "misuse of telephone"); <u>Alkebulanyahh</u>, 2009 WL 2043912 at *10(no Eighth Amendment violation where an

inmate's visitation privileges were suspended for more than two-years following eleven major disciplinary convictions). Further, Plaintiff does not allege that he has suffered a significant injury or experienced an extreme deprivation of a basic human need. Although the suspension of Plaintiff's visitation and telephone privileges is restrictive, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

**4**.     **Plaintiff's Motion for Default Judgment.**

Plaintiff requests that the District Court enter default judgment pursuant to Rule 55(a) of the Federal Rules of Civil Procedure "on the grounds that Defendants have not followed time limits as required under the Federal Rules of Civil Procedure." (Document No. 16.) Rule 55(a) of the Federal Rules of Civil Procedure permits the entry of default judgment "[w]hen a party against whom affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . .." After reviewing all of the pleading and filings in this case, the undersigned finds that Defendants did not default by failing to respond to Plaintiff's Complaint. The record reflects that at the time Plaintiff filed his Motion for Default Judgment, Defendants had not been served with process and were not required to respond to Plaintiff's Complaint.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 1.), **DENY** Plaintiff's Motion for Default Judgment (Document No. 16.), **DISMISS** Plaintiff's Complaint (Document No. 2.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby

**FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: January 14, 2011.

R. Clarke VanDervort
United States Magistrate Judge